The Honorable David G. Estudillo

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> MICHAEL LAYES a/k/a MIKEY DIAMOND STARRETT, <br><br> Defendant. | NO. CR21-5334-DGE <br><br> GOVERNMENT'S TRIAL BRIEF |

The United States of America, by and through Nicholas W. Brown, United States Attorney for the Western District of Washington, and Rebecca S. Cohen and Max B. Shiner, Assistant United States Attorneys for said District, respectfully submits the Government's Trial Brief for the jury trial in the above-entitled matter scheduled to begin on November 29, 2021, before this Court.

## I. INTRODUCTION

Defendant Michael Layes a/k/a Mikey Diamond Starrett (Starrett) is charged by Indictment with one count of Possession of an Unregistered Firearm, in violation of Title 26, United States Code, Sections 5861(d) and 5845(a)(2).

Trial is set to commence on November 29, 2021. The government will be represented by Assistant United States Attorneys Rebecca S. Cohen and Max B. Shiner. The defendant is representing himself with the assistance of standby counsel Lance Hester.

U.S. v. LAYES A/K/A STARRETT, CR21-5334-DGE - 1
GOVERNMENT'S TRIAL BRIEF

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

## II. TRIAL MATTERS

### A. Estimated Length of Trial

The government anticipates needing approximately one to two days to present its case in chief.

### B. Government Witnesses

The government intends to call approximately seven witnesses to testify in its case in chief at trial, as identified in a separately filed witness list.

### C. Government Exhibits

The government has identified its proposed trial exhibits in a separately filed exhibit list. The government's proposed exhibits consist of physical evidence (a firearm), documents, and photographs.

## III. FACTUAL BACKGROUND

### A. The Investigation

At approximately 6:00 a.m. on Wednesday, September 8, 2021, law enforcement executed a search warrant at a residence in Olympia, Washington, where Starrett lived at the time with his then girlfriend, and conducted a search of the residence.[1]

Two individuals were present at the residence when law enforcement arrived on September 8, 2021: Starrett and his then girlfriend. Law enforcement found six firearms in the residence, including a "short-barreled shotgun," that is, a weapon made from a Remington 870 Express Magnum, 12-gauge shotgun bearing Serial Number C568363M, found in Starrett's bedroom. The weapon was tucked between the mattress and the bedroom wall. Starrett's then girlfriend told agents that she does not own any firearms and that all guns in the house belong to Starrett. Likewise, Starrett made statements to law enforcement on the day of the search, confirming his knowledge and possession of the firearm, but claiming that it was already modified when it came into his possession. Due to both the firearm's shortened length and its shortened barrel it is subject to the National Firearms Act (NFA), which regulates unusually dangerous weapons. Such a firearm cannot be legally manufactured, possessed or transferred in

---

[1] The government does not intend to offer testimony or evidence regarding the reason law enforcement obtained a search warrant for Starrett's residence.

U.S. v. LAYES A/K/A STARRETT, CR21-5334-DGE - 2
GOVERNMENT'S TRIAL BRIEF

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

the United States without registration pursuant to the National Firearms Act (NFA). Starrett had not registered the firearm in question with the National Firearms Registration and Transfer Record as a Weapon Made from a Shotgun, as required by law. Agents therefore arrested Starrett for unlawful possession of an unregistered firearm, and a Complaint was signed later the same day.

It was later determined that Starrett had purchased the shotgun, before it was modified, from a Walmart in Maine in 1999. Kevin L. Anderson of the Federal Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) National Tracing Center Division will testify as a custodian of records for ATF that he searched ATF records and databases to determine where the modified shotgun was originally purchased and by whom. In addition, the government will offer into evidence certified records from ATF showing this purchase, and may offer other ATF records showing Starrett's purchases of additional firearms to show his knowledge and familiarity of firearms more generally, specifically shotguns and rifles.

**B.      Technical Examination of the Firearm**

After Starrett's arrest, the modified shotgun was sent to the Firearms Technology Industry Services Branch of ATF for technical examination. Daniel Hoffman, the Chief of the Firearms Technology Industry Services Branch, examined, test-fired and measured the weapon. Mr. Hoffman determined that the weapon is a 12-gauge firearm originally manufactured as a shotgun by the Remington Arms Company that has had its shoulder stock replaced with a pistol grip portion of a top-folding shoulder stock. He also determined that the weapon is 24-3/4 inches in overall length and contains a smoothbore barrel of approximately 14-1/8 inches in length. Therefore, the weapon meets the definition of a "firearm" under 26 U.S.C. § 5845(a)(2), as it is a weapon made from a shotgun, which as modified, has an overall length of less than 26 inches and a barrel of less than 18 inches.

Mr. Hoffman will testify about his opinions at trial. Mr. Hoffman's opinions are based on his training and experience, as well as his examination, measuring and test-firing of the firearm in question. He has testified as an expert on NFA firearms approximately eleven times in the past, once in state court and the remaining times in federal court. This testimony is admissible pursuant to Federal Rule of Evidence 702, which provides that "[i]f scientific,

U.S. v. LAYES A/K/A STARRETT, CR21-5334-DGE - 3
GOVERNMENT'S TRIAL BRIEF

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto." The decision to admit expert testimony "is committed to the discretion of the [trial] court and will not be disturbed [on appeal] unless manifestly erroneous." *United States v. Kinsey*, 843 F.2d 383, 388 (9th Cir. 1988).

### C.  NFA Registration

If a firearm is subject to regulation under the NFA, the possessor of the weapon must register the rifle with the National Firearms Registration and Transfer Record and pay for a tax stamp. Jason Bowers of the ATF NFA Division Government Support Branch, and a custodian of the National Firearms Registration and Transfer Record, will testify that Starrett did not register the firearm as required by law.

## IV. APPLICABLE LAW

### A.  Possession of an Unregistered Firearm

Count One charges Starrett with Possession of an Unregistered Firearm, specifically, a weapon made from a shotgun having a barrel length of less than 18 inches or an overall length of less than 26 inches, in violation of Title 26, United States Code, Sections 5861(d) and 5845(a)(2). In order for a defendant to be convicted of that charge, the government must prove each of the following elements beyond a reasonable doubt: first, that the defendant knowingly possessed a weapon that meets the definition of "firearm" in Title 26, United States Code, Section 5845; second, that the defendant was aware that the weapon had the essential characteristics that make it a "firearm"; and third, the defendant had not registered the firearm with the National Firearms Registration and Transfer Record. Ninth Circuit Model Jury Instruction – 9.34 (modified). Under Title 26, United States Code, Section 5845, the definition of "firearm" includes a weapon made from a shotgun if such weapon as modified has an overall length of less than 26 inches or a barrel or barrels of less than 18 inches in length.

### B.  Knowledge of the Firearm's Illegality

It is well settled that the government does not have to prove that the defendant knew that it was illegal to possess the modified shotgun. *United States v. Summers*, 268 F.3d 683, 688 (9th Cir. 2001); Ninth Circuit Model Instruction 9.34 (2010). Similarly, the government does not

U.S. v. LAYES A/K/A STARRETT, CR21-5334-DGE - 4
GOVERNMENT'S TRIAL BRIEF

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

have to prove that the defendant knew that the firearm had to be registered, *Summers*, 268 F.3d at 688, or that the defendant knew the precise length of the rifle barrel. *United States v. Sanders*, 520 F.3d 699, 701–02 (7th Cir. 2008).

### C. Knowledge of the Firearm's Characteristics

A defendant's awareness of his firearm's characteristics can be inferred from circumstantial evidence. *United States v. Thompson*, 82 F.3d 849, 854 (9th Cir. 1996). With respect to a firearm's barrel length, as opposed to its operability, "externally visible characteristics weigh heavily" as to a person's awareness of the characteristics of the firearm. *United States v. Gergen*, 172 F.3d 719, 725 (9th Cir. 1999); *accord United States v. Staples*, 511 U.S. 600, at 615 n.11 (1994) (stating that a defendant's knowledge of the characteristics of the firearm can be inferred circumstantially from "any external indicators signaling the nature of the weapon").

Numerous cases have affirmed that knowledge of a firearm's features and characteristics may be inferred from the physical appearance of the firearm itself. *See generally United States v. Giambro*, 544 F.3d 26, 30 (1st Cir. 2008) (holding that "external indications signaling the nature of the weapon were sufficient to put even a layperson on notice" about the characteristics of the firearm (internal citations omitted)); *United States v. Green*, 435 F.3d 1265, 1273 (10th Cir. 2006) (affirming that a jury could infer a defendant's awareness of a shotgun's barrel length based on the physical appearance of the shotgun); *United States v. Miller*, 255 F.3d 1282, 1287 (11th Cir. 2001) (noting that "the length of the barrel is a patently obvious characteristic, readily apparent to anyone, including Miller, who observes the gun"); *United States v. Jackson*, 124 F.3d 607, 614 (4th Cir. 1997) (concluding that the defendant's knowledge of the proscribed nature of the firearm could be inferred from his possession of the weapon because it was "an obvious 8 inches shorter than that permitted under the statute"); *United States v. Moore*, 97 F.3d 561, 564 (D.C. Cir. 1996) (determining that the jury could have reasonably inferred that the defendant knew the rifle was shorter than 16 inches by observing the 13-1/16 inch weapon); *United States v. Foster*, 19 F.3d 1452, 1454 (D.C. Cir. 1994) (holding that the readily apparent barrel length and general appearance of the sawed-off rifle were sufficient to allow a jury to conclude that the defendant had the requisite knowledge).

U.S. v. LAYES A/K/A STARRETT, CR21-5334-DGE - 5
GOVERNMENT'S TRIAL BRIEF

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

## V. EVIDENTIARY AND LEGAL ISSUES

### A. Starrett's Statements

The government intends to introduce at trial statements made by Starrett to an ATF agent on September 8, 2021, during the execution of the search warrant at his residence. Starrett told the agent that he had put the pistol grip on the weapon himself, but claimed that he bought it with the barrel already cut off. The government also intends to offer into evidence statements made by Starrett in emails to the Court; specifically, statements about when and where he purchased the firearm, how long he owned it, his knowledge of applicable laws and requirements, and modifications made to the weapon. These statements are properly admitted as admissions of a party-opponent. Fed. R. Evid. 801(d)(2)(A); *United States v. Burreson*, 643 F.2d 1344, 1349 (9th Cir. 1981).

### B. Business Records

The government anticipates offering business records from Google and the retail sporting goods store Cabela's that show the firearm-related purchases made by Starrett at Cabela's and searches he performed using Google about shotguns and, specifically, short-barreled shotguns. These records demonstrate Starrett's knowledge of firearms generally and shotguns more specifically, and are authenticated with accompanying certifications of records custodian pursuant to Rule 803(6) and Rule 902(11). The government will file simultaneously with this trial brief a motion *in limine* asking the Court to authenticate the business records through the certifications.

### C. Summary Charts

The government may seek to introduce exhibits summarizing the information from records produced by Cabela's and Google discussed above, including information on Google searches conducted by Starrett about shotguns and records from Cabela's showing his purchase of firearms and firearm-related products. The government intends to have an ATF agent testify about the summary exhibits. The government may use some of its charts and summaries during opening statements, the presentation of its case in chief and/or during closing argument. These charts and summaries will assist the jury in understanding the government's proof in this case.

U.S. v. LAYES A/K/A STARRETT, CR21-5334-DGE - 6
GOVERNMENT'S TRIAL BRIEF

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

It is well-established that a trial court in its discretion may allow the presentation of summary evidence to guide and assist the jury in understanding and judging the factual controversy. *See* Fed. R. Evid. 1006; *United State v. Skalicky*, 615 F.2d 1117, 1120-21 (5th Cir. 1980); *United States v. Cooper*, 464 F.2d 648, 656 (10th Cir. 1972). A foundation for the admission of each chart and summary will be laid through the testimony of a witness, who will testify that the charts and summaries accurately reflect information contained in documents already in or to be admitted into evidence. *See United States v. Lemire*, 720 F.2d 1327, 1349 (D.C. Cir. 1983); *United States v. Pollack*, 417 F.2d 240, 241 (5th Cir. 1969).

Federal Rule of Evidence 1006 provides that "the contents of voluminous writings, recordings or photographs which cannot be conveniently examined in Court may be presented in the form of a chart, summary, or calculation." The Ninth Circuit has recognized that summary evidence "can help the Jury organize and evaluate evidence which is factually complex and fragmentally revealed in the testimony of the multitude of witnesses." *United States v. Shirley*, 884 F.2d 1130, 1133 (9th Cir. 1989), quoting *United States v. Lemire,* 720 F.2d 1327, 1348 (D.C. 1983); *see also United States v. Meyers*, 847 F.2d 1408, 1412 (9th Cir. 1988) (approving the use of a summary chart where the sequence of events was confusing and the chart contributed to the clarity of the presentation).

Although the underlying materials upon which the summary testimony is based must be "admissible," they need not be actually admitted into evidence. *United States v. Meyers,* 847 F.2d at 1412. The foundation for admission of such a summary is simply that the records are voluminous and that in-court examination would be inconvenient. *United States v. Duncan*, 919 F.2d 981, 988 (5th Cir. 1990).

A summary witness may also properly testify about, and use a chart to summarize, evidence that has already been admitted. The court and jury are entitled to have a witness "organize and evaluate evidence which is factually complex and fragmentally revealed." *United States v. Shirley*, 884 F.2d 1130, 1133-34 (9th Cir. 1989) (agent's testimony regarding her review of various telephone records, rental receipts, and other previously offered testimony held to be proper summary evidence as it helped the Jury organize and evaluate evidence; summary

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

charts properly admitted); *United States v. Lemire*, 720 F.2d 1327, 1348 (D.C. Cir. 1983), *cert. denied,* 467 U.S. 1266 (1984).

Finally, a summary witness may rely on the analysis of others where he or she has sufficient experience to judge another person's work and incorporate as his own the facts of that individual's expertise. The use of other persons in the preparation of summary evidence goes to its weight, not its admissibility. *United States v. Soulard*, 730 F.2d 1292, 1299 (9th Cir. 1984); *see Diamond Shamrock Corp. v. Lumbermens Mutual Casualty Co.*, 466 F.2d 722, 727 (7th Cir. 1972) (It's not necessary… that every person who assisted in the preparation of the original records of the summaries be brought to the witness stand").

### D.     National Firearms Registration and Transfer Record

The government will offer a certified report signed by an ATF custodian with custody and control of the National Firearms Registration and Transfer Record, stating that after a diligent search, he found no evidence that the firearm had been registered by Starrett. The ATF custodian, Jason Bowers, will testify about his search at trial. The report is a self-authenticating domestic public document admissible under Federal Rule of Evidence 902(2).[2] The content of the report is not hearsay because it confirms the absence of a record. *See* Fed. R. Evid. 803(10) (confirming that testimony about the absence of a public record is not hearsay); *see also United States v. Combs*, 762 F.2d 1343, 1347-48 (9th Cir. 1985) (upholding the admissibility of a certified report regarding the absence of registration in National Firearms Registration and Transfer Record). Furthermore, testimony of the absence of a record does not implicate Federal Rule of Evidence 1002 (the "best evidence rule"). *United States v. Diaz-Lopez,* 625 F.3d 1198, 1200-1202 (9th Cir. 2010).

---

[2] Rule 902(2) provides:
> Extrinsic evidence of authenticity as a condition precedent to admissibility is not required with respect to the following:
> (1) Domestic public documents under seal. A document bearing a seal purporting to be that of the United States . . . or of a political subdivision, department, office, or agency thereof, and a signature purporting to be an attestation or execution.
> (2) Domestic public documents not under seal. A document purporting to bear the signature in his official capacity of an officer or employee of any entity included in paragraph (1) hereof, having no seal, if a public officer having a seal and having official duties in the district or political subdivision of the officer or employee certifies under seal that the signer has the official capacity and that the signature is genuine.

U.S. v. LAYES A/K/A STARRETT, CR21-5334-DGE - 8
GOVERNMENT'S TRIAL BRIEF

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

### E. Physical Evidence

The government will introduce one firearm in its case-in-chief: the modified shotgun charged in the Indictment. There is no ammunition associated with the firearm. It has been cleared and rendered safe and will remain in the custody of the case agent at all times during the trial unless presented to a witness with the Court's approval.

### F. Arguing Penalties

Absent extraordinary statutes requiring the jury to participate in sentencing determinations, the sole function of the jury is to determine guilt or innocence. Punishment is within the exclusive province of the Court. *United States v. Del Toro*, 426 F.2d 181, 184 (5th Cir. 1970); *Chapman v. United States*, 443 F.2d 917, 920 (10th Cir. 1971).

As such, it is improper for a party to elicit evidence that would allow the jury to speculate as to the punishment a defendant faces if convicted. *United State v. Feuer*, 403 Fed. Appx. 538, 540 (2d Cir. 2010) (unpublished) (absent exceptional circumstances, a "defendant has no legal right to introduce evidence or argument regarding sentencing consequences."); *United States v. Cook*, 776 F.Supp. 755, 756-57 (S.D.N.Y. 1991) ("The function of the jury in a criminal trial is to determine guilt or innocence based upon an impartial consideration of the evidence, unswayed by emotion, fear, or prejudice. Where the jury is permitted to speculate concerning a defendant's possible punishment, a jury cannot properly perform that function.") (citations omitted); *see also United States v. Pabon-Cruz*, 391 F.3d 86 (2d Cir. 2004).

It is proper for the court to interrupt any arguments relating to punishment or appeals for mercy. *See United States v. Wilson*, 439 F.2d 1081, 1082 (5th Cir. 1971); *Gretter v. United States*, 422 F.2d 315, 319 (10th Cir. 1970). Some cases have held that the court is required to do so. *See United States v. Ramantanin*, 452 F.2d 670, 672 (4th Cir. 1971); *May v. United States*, 175 F.2d 994, 1010 (D.C. Cir. 1949); *see also United States v. Young*, 470 U.S. 1, 13 (1985) (stating that the "better course" would have been for the trial judge to interrupt defense counsel's improper argument rather than leaving it for the prosecutor to address in rebuttal.

To allow the jury to be swayed by arguments regarding possible punishment would be to permit them to violate their oath not to allow their verdict to be affected by sympathy. *See United States v. Del Toro*, 426 F.2d at 184 ("To inform the jury [concerning] matters relating to

U.S. v. LAYES A/K/A STARRETT, CR21-5334-DGE - 9
GOVERNMENT'S TRIAL BRIEF

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

the disposition of the defendant, tends to draw the attention of the jury away from their chief function as sole judges of the facts, open the door to compromise verdicts and to confuse the issue or issues to be decided.") (quoting *Pope v. United States*, 298 F.2d 507 (5th Cir. 1962)).

In short, the defendant should not seek to inflame the prejudices of the jury or conjure up sympathy by referring to the potential sentences and collateral consequences he would face upon conviction, and the government will request the Court to advise defendant of his obligation to refrain from doing so.

## VI.   FORFEITURE

The government intends to seek forfeiture in this case of any firearms involved in the crime; specifically, the Remington 870 Express Magnum, 12-gauge shotgun bearing serial number C568363M, identified in the Indictment. This firearm was involved in the charged offense and is forfeitable pursuant to 26 U.S.C. § 5872, by way of 28 U.S.C. § 2461(c). The government expects the evidence at trial to establish the required nexus between the firearm and the charged offense

### A.   Legal Standard for Forfeiture

Criminal forfeiture is a form of punishment that is imposed as part of a criminal sentence. *Libretti v. United States*, 516 U.S. 29, 39 – 40 (1995). For the government to criminally forfeit property, there must be a predicate criminal conviction, a statute authorizing forfeiture for the crime of conviction, and evidence to support the statutorily required nexus between the property and the crime of conviction. *See, e.g., United States v. Garcia-Guizar*, 160 F.3d 511, 518-20 (9th Cir. 1998) (reviewing these requirements). With respect to the required nexus, the government must establish the forfeitability of the relevant property by a preponderance of the evidence. *United States v. Martin*, 662 F.3d 301, 307 (4th Cir. 2011); *see also United States v. Rutgard*, 116 F.3d 1270, 1293 (9th Cir. 1997); *United States v. Hernandez-Escarsega*, 886 F.2d 1560, 1576-77 (9th Cir. 1989). In other words, depending on the relevant forfeiture statute, the government must present evidence that establishes the relevant property is, "more likely than not," forfeitable as proceeds of the crime, property that facilitated the crime, and/or property involved in the crime. This lower standard of proof "is constitutional because the criminal forfeiture provision does not itself describe a separate offense, but is merely an 'additional

U.S. v. LAYES A/K/A STARRETT, CR21-5334-DGE - 10
GOVERNMENT'S TRIAL BRIEF

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

penalty' for an offense that must be proved beyond a reasonable doubt." *United States v. Garcia-Guizar*, 160 F.3d at 518 (citing *United States v. Hernandez-Escarsega*, 886 F.2d at 1577).

In this case, there is statutory authority to forfeit the identified property if the jury has found Starrett guilty of Count 1 in the Indictment, as set forth above. The government expects the evidence at trial will establish, to a preponderance, that the identified firearm was involved in the charged offense.

### B. Forfeiture Process

Rule 32.2 sets out the procedures for determining the forfeitability of property in a criminal case. Forfeitures are decided after a guilty verdict is returned on a count that supports the forfeiture. *See* Rule 32.2(b)(1)(A). At that juncture, the specific question for the fact finder is "whether the government [has established the] requisite nexus between the property and the offense." Rule 32.2(b)(1)(A). The defendant and the government have a right for a jury to determine the forfeitabilility of any specific property. This is not a constitutional right. *See United States v. Libretti*, 516 U.S. 29, 49 (1995) ("the nature of criminal forfeiture as an aspect of sentencing compels the conclusion that the right to a jury verdict on forfeitability does not fall within the Sixth Amendment's constitutional protection"). Instead, it is a right afforded by the rules governing criminal forfeiture. *See* Rule 32.2(b)(5) (providing the jury must determine the forfeitability of specific property if "either party" so requests).

As forfeiture is determined post-conviction, and is considered part of sentencing, the rules of evidence do not strictly apply to forfeiture proceedings. *See e.g., United States v. Hatfield*, 795 F. Supp. 2d 219, 229-30 (E.D.N.Y. 2011) (holding neither the Federal Rules of Evidence nor *Daubert* apply to forfeiture hearings) and *United States v. Creighton*, 52 Fed. Appx. 31, 35 – 36 (9th Cir. 2002) ("hearsay evidence is permissible at sentencing and does not, per se, lack sufficient indicia of reliability"). The fact finder may consider any evidence that is "relevant and reliable." Fed. R. Crim. P. 32.2(b)(1)(B). This includes any evidence presented by the parties during trial on the substantive criminal offenses. *See id.* ("The court's [or jury's forfeiture] determination may be based on evidence already in the record …."); *see also United States v. Newman*, 659 F.3d 1235, 1244-45 (9th Cir. 2011) (same).

U.S. v. LAYES A/K/A STARRETT, CR21-5334-DGE - 11
GOVERNMENT'S TRIAL BRIEF

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

|   |   |
|---|---|
| 1 | If the defendant is convicted of the charged offense, the government expects to present |
| 2 | the forfeiture case in a supplemental proceeding pursuant to Fed. R. Crim. P. 32.2(b)(1). The |

If the defendant is convicted of the charged offense, the government expects to present the forfeiture case in a supplemental proceeding pursuant to Fed. R. Crim. P. 32.2(b)(1). The government is willing to waive its right to retain the jury for that proceeding and have the Court decide the forfeitures. *See* Fed. R. Crim. P. 32.2(b)(5). If, however, the defendant is unwilling to waive, the government is prepared to present the forfeiture case to the jury. For use in that proceeding, the government has submitted proposed forfeiture jury instructions and a proposed special forfeiture verdict form that are specific to forfeiture and would only be used if defendant is convicted of Count 1.

In the forfeiture proceeding, the government expects to rely entirely on the testimony and evidence introduced during the guilt/innocence phase of trial. The government expects to present argument with respect to the forfeiture of the firearm, but it does not expect to present any additional testimony or exhibits. The government reserves its right, however, to offer alternative arguments and evidence in support of forfeiture, and to take different positions with respect to forfeiture, as necessary to respond to developments at trial.

## VII. CONCLUSION

The government will supplement this trial brief, if necessary, to address any additional issues that may be raised.

Dated this 18th day of November, 2021.

Respectfully submitted,

NICHOLAS W. BROWN
United States Attorney

*/s/ Rebecca S. Cohen*
REBECCA S. COHEN
MAX B. SHINER
Assistant United States Attorneys
700 Stewart Street, Suite 5220
Seattle, Washington 98101
Phone: 206-553-7970
Email: Rebecca.Cohen@usdoj.gov

U.S. v. LAYES A/K/A STARRETT, CR21-5334-DGE - 12
GOVERNMENT'S TRIAL BRIEF

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970